CAIN v. SISK.—72 S. W. (2d) 1061.

Middle Section. February 17, 1934.

Petition for Certiorari denied by Supreme Court, June 23, 1934.

Kelly & Kelly, of South Pittsburg, for plaintiff in error.

Sizer, Chambliss & Kefauver, of Chattanooga, for defendant in error.

DeWITT, J. Sisk, a coal miner, while employed by Cain, lessee of the mine, sustained serious and permanent injuries from falling of a large rock from the roof of the room in which he was loading coal from the floor into a car. In this common-law action he obtained a verdict and judgment for $3,000 as damages. A plea in abatement that he had made claim for workman's compensation, and had received medical service and payments of compensation in the manner provided by the Workmen's Compensation Law, was overruled by the trial judge, the issue having been submitted to him without a jury, by agreement. The defendant filed a plea of not guilty, and the issue presented by the declaration and this plea was submitted to and determined by a jury.

The defendant, Cain, employed about twenty men, but had not complied with the provisions of the Workmen's Compensation Law. However, he furnished medical service to the defendant and made payments to Sisk amounting to $54. These payments were charged against Sisk on an account book. Cain testified that he rendered Sisk monthly statements of the "amounts advanced," showing at the end of each month the amount which "he owed;" that the payments were made as compensation and he intended to make them as such. Sisk testified that he made no written application for compensation; that being in need of money and thinking that he was due some damages, he applied to Cain for some money; that he understood that if he should resume the employment he would have to repay the sums received; that he thought that the cost of medical service was being charged to him; that he did not intend to apply for workman's compensation; and that he wanted damages.

Certain papers purporting to show these payments are attached to the record as exhibits to the testimony of Cain. The trial judge authenticated them as such over his own signature. They bear no evidence of having been marked "filed" by the clerk. For this reason alone, the defendant in error has entered a motion to strike the assignments of error as being based entirely on the evidence, the bill of exceptions being incomplete on its face. The motion must be overruled. The testimony shows without dispute the payments made, the total amount thereof, and the receipt of them; and also that these papers exhibited to the jury were merely confirmatory of and cumulative of this oral evidence which presented no conflict. Neither party had any real need to rely on

these papers. It would be going to an extreme of technicality to sustain the motion. It is not a case where the exhibits not properly made a part of the bill of exceptions had some material bearing upon the rights of parties. The case is not to be aligned with the cases holding that a bill of exceptions thus incomplete on its face cannot be considered, for in those cases the exhibits not properly included had some material bearing upon the issues. We do not have to look to these papers for their contents, for the recitals in them are shown by the undisputed oral testimony. From this testimony, it appears that the recital that the bill of exceptions contains all the evidence is in reality true.

The plea in abatement was properly overruled. There is no evidence that the plaintiff applied for benefits under the Workmen's Compensation Law (Code 1932, section 6851 et seq.), as was done in Barbee v. Baker Car Co., 154 Tenn., 130, 289 S. W., 525, and Shipley v. Silk Throwing Mills, 164 Tenn., 281, 47 S. W. (2d), 561, in which it was held that an application for and receipt of such benefits was an election to take under said law, although it afterward appeared that the employer had not complied with the law by filing evidence by his insurance. It is not sufficient that the employer thought that the employee was applying for and receiving such benefits, when the evidence does not show that he actually did so; and especially since the employer rendered monthly statements which evidenced an intention to claim repayment of the sums advanced. The evidence does not preponderate against the finding made by the trial judge upon the issue presented by the plea in abatement.

The gravamen of the action is that the employer was negligent in not providing to the employee a safe place to work; in not having the roof of the mine properly supported by proper equipment to keep rocks from falling upon him; in installing in a negligent and careless manner timber braces to prevent rock from falling from the roof; and in negligently failing to scale off the loose and unsound rock from the roof and thus prevent it from falling on the employee. the plaintiff below. At last the question was whether or not the failure to place a crossbeam under the roof was an act of negligence proximately causing the accident and injuries. for which the defendant should be held liable. This last clause involved a question of concurring or contributory negligence on the part of the employee. The jury resolved these questions in favor of the plaintiff. The assignment that there is no evidence to sustain the verdict necessitates a review of the material, determinative facts.

The accident occurred in May, 1932. The plaintiff, then about thirty-nine years of age, had been working in coal mines since the year 1917. It was a standing order that an employee must examine

the roof of the room in which he would be working and before working determine whether or not it was safe. On the morning of the accident the mine foreman cautioned the plaintiff concerning this matter. The foreman's testimony was uncontradicted that it was the custom in the mine and it was the duty of the miner to put his safety timber up and make the room safe before going to work; that the employer must furnish this timber and have it available for the miner's use; that the employer must put up the permanent timbers. In the room in question the car tracks were located along the right-hand rib of the room. The timbers were on the left-hand side. Permanent timbers had been erected on the left of the track up to a point six or seven feet from the room. There was a distance of eight or ten feet between the face of the coal and the end of the track. The permanent timbers were upright posts placed at short intervals extending from the floor of the mine to the roof. They did not have crossbars on top of them but merely had small caps. The plaintiff testified that if they had had crossbars on the top, they would have supported a larger proportion of the roof. The plaintiff further testified that he had been working in this room for a short time when Mr. Freeman, the mine foreman, came in and inspected the room; that he sounded the roof with a pick, said that it was bad and should be timbered; that he said that he would send Mr. Dye, the timber man, up to timber the room and make it safe; that Mr. Dye came and he helped him to erect a timber at the end of the tracks; that there was a space of eight or ten feet between this timber and the face of the coal; that Dye told him to go to work loading coal between the end of the tracks and the face of the mine, saying that he would get some more timbers and be back in a few minutes; that in about twenty minutes after he had left, while he, the plaintiff, was shoveling coal, a large rock fell from the roof and struck the lower part of his back, knocking him down and pinning him to the floor. He said that the timber erected by Mr. Dye had no crosspiece on the top of it; that if it had, the crosspiece would have exerted a broader pressure on the roof of the mine so as to prevent rocks from scaling off; that in other places in this mine where the roofs were bad timbers would be put on the right of the tracks with crossbars running from the right timbers to the left timbers, and in this way the roof of the mine would be fully supported and the rock would not fall. He further testified that it was the duty of Mr. Dye to scale off loose rock from the roof and that he could have scaled off this rock when he found it was bad and thus avoided the accident; that Dye made inspections and advised miners as to the condition of the rooms; that the men considered Dye an experienced timber man and took his word as to whether or not it was safe to work. He said that where a roof is bad like this roof, it is often made safe by making

a groove or hatch in the side of the room next to the track and running crossbars from it over to the timbers on the left of the track, and that if this had been done the roof would have been fully supported. He said that he knew how a timber should be supported, but that after Dye told him to go to work he thought that it would be all right to do so, as he thought it was safe.

Other witnesses testified as to the absence of any crossbeam; as to the bad condition of the roof of this room. Some of them, fellow miners, testified that usually when the roof is very bad a cross timber should be erected; that the timber man must determine whether or not the top should be scaled off; that crossbeams should have been placed under the roof of this room.

Mr. Freeman, the mine foreman, testified that about thirty minutes before the accident he asked the plaintiff if the roof of this room was safe, that plaintiff replied that he "reckoned" it was safe; that he told him that he should not guess about it but should make sure; that when he sounded the roof with a pick it sounded hollow; that he told plaintiff that it should be timbered and he told him not to work under it any more until he should send Mr. Dye to help him; that the safety timber was available to the plaintiff at the entrance to the room, but he had not used it; that although it was the plaintiff's duty to put it up he just took the extra precaution to send Mr. Dye to help him. This testimony by Mr. Freeman is uncontradicted.

By the Code, section 5600, the mine foreman is expressly declared to be the agent or representative of the operator or owner of the mine in the discharge of the duties required of the foreman. By section 5594 the foreman is required to "keep a careful watch over the ventilating apparatus, airways, entries, traveling ways, timbers, pumps, and drainage; and, as the mines advance their excavations, he shall see that all dangerous coal, slate, or rock overhead is taken down or secured against falling, and that sufficient props, caps, and timbers are kept at some convenient point (near the mine entrance), which shall be selected by the miners and delivered by the operator to the miners' working places."

In the leading case of Heald, Receiver, v. Wallace, 109 Tenn., 346, 71 S. W., 80, liability for the death of a miner from falling of a large overhanging rock was denied by the court because of his continuing to work resulting in undermining the rock, after cross-timbers had been properly placed. In violation of the rules he assumed the obvious risk and did not wait to have the dangerous place repaired by being again properly timbered. He was guilty of gross contributory negligence which was the proximate cause of the accident.

The duty of the employer to provide his employee with a safe place to work was held not to be justly applicable to cases in which

the very work the servants are employed to do consists in constantly changing the character of the place for safety as the work progresses. It was a case of an unfortunate miner whose negligence caused his death so that there could be no recovery. That case in its essential elements is not controlling upon the case before us.

██ Sisk was not mining but was loading coal. There is no evidence that he had produced the dangerous condition by rendering the roof unsafe. The place was not becoming dangerous by reason of the progress of his work. Although it may have been his original duty to place the timbers, this duty was taken off his hands and assumed by Dye, the timber man. It was then Dye's duty, as the representative of the operator, under his instructions from the foreman, to place the timbers in a proper manner for Sisk to be reasonably safe from danger. There is evidence that this was not done; that crossbeams properly placed would have prevented the falling of the rock. In Consolidated Coal Co. v. Scheiber, 167 Ill., 539, 47 N. E., 1052, the court observed that whether or not it was the duty of the mine owner to prop the roof of the mine, still, if it assumed that duty and undertook to discharge it, and did so in such a careless manner that the roof was thereby loosened and rendered more liable to fall, it would be responsible for the resulting injury. If the operator or his agent undertakes to perform the timbering work himself, he is bound to perform it with reasonable care.

██ The jury could reasonably conclude that Sisk was not negligent in relying upon the advice of Dye after he placed the timbers; that Sisk did not then have full knowledge of the dangerous condition; and that therefore he was not guilty of concurring or contributory negligence.

We find that there is material evidence to support the verdict. The assignments of error are overruled, and the judgment of the circuit court is affirmed. Judgment will be entered here accordingly. The costs of the appeal in error will be adjudged against the plaintiff in error and the surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.